**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| JORDAN SPRING, STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, and STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:22-cv-495 ) |
| PARACLETE TRANSPORT, LTD., THE ROYAL BANK OF CANADA, RALF SAWITZKY, and HOFFMAN CONSTRUCTION COMPANY, | ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT AT LAW

### I. INTRODUCTION

1.     This is a civil action seeking monetary damages against Defendants for committing acts or omissions of negligence against the Plaintiffs.

### II. JURISDICTION

2.     Plaintiffs are citizens and residents of the State of Illinois.

3.     Defendant Paraclete Transport, Ltd., is a Canadian Corporation and does business in Wisconsin, travels along the highways and interstates of Wisconsin, and is the employer of the defendant who was involved in a crash in Dane County, Wisconsin, which is the subject of this complaint.

4.     Defendant The Royal Bank of Canada is a Canadian company and is the owner of the vehicle that was involved in a crash in Dane County, Wisconsin, which is the subject of this complaint.

5.     Defendant Ralf Sawitzky is a Canadian citizen and is the driver of the vehicle that was involved in a crash in Dane County, Wisconsin, which is the subject of this complaint.

6.     Defendant Hoffman Construction Company is a Wisconsin corporation having its principal place of business in Wisconsin.

7.     This matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

8.     The Court has jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

9.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### III. PARTIES

10.     Plaintiffs Jordan Spring, State Bank of Freeport, Guardian of the Estate of Carter Bomkamp, a minor, and, State Bank of Freeport, Guardian of the Estate of Ethan Bomkamp, a minor, at all times relevant have been and are citizens of the city of Rockford, State of Illinois, and the United States of America.

11.     Defendant Paraclete Transport, Ltd., at all times relevant hereto was and is a Canadian company.

12.     Defendant the Royal Bank of Canada at all times relevant hereto was and is a Canadian company.

13.     Defendant Ralf Sawitzky at all times relevant hereto was and is a resident and citizen of Manitoba, Canada.

14.     Defendant Hoffman Construction Company at all times relevant hereto was and is a Wisconsin corporation.

### IV. SPECIFIC COUNTS AGAINST INDIVIDUAL DEFENDANTS

**COUNT ONE**
**JORDAN SPRING v. PARACLETE TRANSPORT, LTD**
**DIRECT NEGLIGENCE**

NOW COMES Plaintiff JORDAN SPRING by and through his attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant PARACLETE TRANSPORT, LTD., pleading hypothetically and in the alternative, states:

15. On September 5, 2020, Plaintiff Jordan Spring ["Spring"] resided at 1528 Grant Avenue, Rockford, Illinois, Winnebago County, Illinois.

16. At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

17. At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business, doing business, and transporting freight through the United States of America and through Illinois.

18. At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

19. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

20. At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

21. At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, US DOT No. 684905, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

22. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

23. At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

24. At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

25. At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

26. At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

27. On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

28. On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

29. At the above time and place, Plaintiff Spring was a passenger in Bomkamp's vehicle.

30. At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

31. At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

32. At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

33. After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

34. On September 5, 2020, Spring was injured.

35. In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

36. In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

37. In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.  49 C.F.R. §390.5.

38. In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety. "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle.  49 C.F.R. §390.5.

39. At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

40. At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

41. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, and through its employees, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

42. At all times relevant to this case, defendant PARACLETE TRANSPORT operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

43. As a motor carrier, defendant PARACLETE TRANSPORT had a duty to require its drivers, including RALF SAWITZKY, to observe all duties or prohibitions set forth in the Motor Carrier Safety Regulations.  49 C.F.R. §390.11.

44. On and before September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agents and/or employees, had a duty as a motor carrier to exercise ordinary care in training and supervising its drivers.

45. On and before September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agents and/or employees, had a duty as a motor carrier to exercise ordinary care in training and supervising its drivers on how to drive in accordance with the FMCSR and the standards of care in the trucking industry.

46. At all times relevant to this case, it was the duty of defendant PARACLETE TRANSPORT and its agent and/or employee, RALF SAWITZKY, to exercise reasonable care and caution in the operating, inspection, and maintenance of its tractor and trailer for the safety of others, including Jordan Spring.

47. Notwithstanding its duties, defendant PARACLETE TRANSPORT and its agents and/or employees, were guilty of one or more of the following acts and/or omissions:

> (a)  Inadequately trained its drivers; or
>
> (b)  Inadequately supervised its drivers; or
>
> (c)  Assigned unqualified people to train and supervise its drivers; or
>
> (d)  Taught its drivers improper ways to use cruise control; or
>
> (e)  Inadequately trained its drivers on the dangers of driving in a construction zone; or
>
> (f)  Did not provide ongoing training to Ralf Sawitzky on the proper use of cruise control; or
>
> (g)  Did not evaluate Ralf Sawitzky's on-the-job performance as a CDL driver.

48. One or more of these acts and/or omissions of defendant PARACLETE TRANSPORT was a proximate cause of the collision between the Truck being driven by Sawitzky and the Honda being driven by BOMKAMP.

49. As a direct and proximate result of one or more of these acts and/or omissions by Defendant PARACLETE TRANSPORT, Jordan Spring has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff Jordan Spring demands judgment against Defendant PARACLETE TRANSPORT, LTD. in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

## COUNT TWO
## JORDAN SPRING v. PARACLETE TRANSPORT, LTD
## VICARIOUS LIABILITY

NOW COMES Plaintiff JORDAN SPRING by and through his attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant PARACLETE TRANSPORT, LTD., directly and through the acts or omissions of RALF SAWITZKY, as the agent and/or employee of PARACLETE TRANSPORT, LTD., pleading hypothetically and in the alternative, states:

50. On September 5, 2020, Plaintiff Jordan Spring ["Spring"] resided at 1528 Grant Avenue, Rockford, Illinois, Winnebago County, Illinois.

51. At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

52. At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business,

doing business, and transporting freight through the United States of America and through Illinois.

53. At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

54. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

55. At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

56. At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

57. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

58. At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

59. At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

60. At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

61. At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

62. On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

63. On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

64. At the above time and place, Plaintiff Spring was a passenger in Bomkamp's vehicle.

65. At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

66. At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

67. At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

68. After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

69. On September 5, 2020, Spring was injured.

70. In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

71. In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

72. In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.  49 C.F.R. §390.5.

73. In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety. "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle.  49 C.F.R. §390.5.

74. At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

75. At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

76. At all times relevant to this case, defendant RALF SAWITSKY operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

77. Defendant PARACLETE TRANSPORT is vicariously liable for the negligent acts and omissions of its agent, RALF SAWITZKY, for the conduct alleged above and the conduct on September 5, 2020, contrary to and in violation of 49 C.F.R. §390.11, adopted by reference in 625 ILCS 5/18b-105.

78. On September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agent and/or employee, RALF SAWITZKY, had a duty to exercise ordinary care to avoid colliding with the car in which Jordan Spring was a passenger.

79. At all times relevant to this case, it was the duty of defendant PARACLETE TRANSPORT by and through the acts of its agent and/or employee, RALF SAWITZKY, to exercise reasonable care and caution in the operation, inspection and maintenance of its tractor and trailer for the safety of others, including Jordan Spring.

80. Notwithstanding its duty, defendant PARACLETE TRANSPORT by and through its agent and/or employee, RALF SAWITZKY, was guilty of one or more of the following acts and/or omissions:

   (a) Did not keep a safe and proper lookout; or

12

(b) Drove too fast for traffic conditions; or

(c) Used cruise control in a construction zone; or

(d) Did not apply brakes in a timely manner; or

(e) Did not pay attention to developing traffic patterns.

81. One or more of these acts and/or omissions of defendant PARACLETE TRANSPORT was a proximate cause of the collision between the Truck being driven by RALF SAWITZKY and the Honda being driven by BOMKAMP.

82. As a direct and proximate result of one or more of these acts and/or omissions by Defendant PARACLETE TRANSPORT, Jordan Spring has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff Jordan Spring demands judgment against Defendant PARACLETE TRANSPORT, LTD. in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT THREE**
**JORDAN SPRING v. RALF SAWITZKY**
**DIRECT NEGLIGENCE**

NOW COMES Plaintiff JORDAN SPRING by and through his attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant RALF SAWITZKY, pleading hypothetically and in the alternative, states:

83. On September 5, 2020, Plaintiff Jordan Spring ["Spring"] resided at 1528 Grant Avenue, Rockford, Illinois, Winnebago County, Illinois.

84. At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

85. At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business, doing business, and transporting freight through the United States of America and through Illinois.

86. At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

87. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

88. At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

89. At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

90. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

91. At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

92. At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

93. At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

94. At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

95. On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

96. On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

97. At the above time and place, Plaintiff Spring was a passenger in Bomkamp's vehicle.

98. At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

99. At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

100. At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

101. After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

102. On September 5, 2020, Spring was injured.

103. In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

104. In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

105. In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.  49 C.F.R. §390.5.

106.    In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety.   "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle.   49 C.F.R. §390.5.

107.    At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

108.    At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

109.    At all times relevant to this case, defendant RALF SAWITZKY operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

110.    At all times relevant to this case, it was the duty of defendant RALF SAWITZKY to exercise reasonable care and caution in the operation, inspection, and maintenance of its tractor and trailer for the safety of others, including Jordan Spring.

111.    On September 5, 2020, defendant RALF SAWITZKY had a duty to exercise ordinary care to avoid colliding with the car in which Jordan Spring was a passenger.

112.    Notwithstanding his duty, defendant RALF SAWITZKY was guilty of one or more of the following acts and/or omissions:

    (a) Did not keep a safe and proper lookout; or

(b) Drove too fast for traffic conditions; or

(c) Used cruise control in a construction zone; or

(d) Did not apply brakes in a timely manner; or

(e) Did not pay attention to developing traffic patterns.

113.    One or more of these acts and/or omissions of defendant RALF SAWITZKY was a proximate cause of the collision between the Truck being driven by RALF SAWITZKY and the Honda being driven by BOMKAMP.

114.    As a direct and proximate result of one or more of these acts and/or omissions by Defendant RALF SAWITZKY, Jordan Spring has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff Jordan Spring demands judgment against Defendant RALF SAWITZKY in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT FOUR**
**JORDAN SPRING v. THE ROYAL BANK OF CANADA**
**DIRECT NEGLIGENCE**

NOW COMES Plaintiff JORDAN SPRING by and through his attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant THE ROYAL BANK OF CANADA, pleading hypothetically and in the alternative, states:

115-146.   Plaintiff adopts and re-alleges Paragraphs Eighty-three (1) through One hundred fourteen (32) of Count Three v. Ralf Sawitzky, from this Complaint at Law as Paragraphs One hundred fifteen (115) through One hundred forty-six (146) inclusive of this Count, as though fully set forth herein.

147.   At all times relevant to this case, defendant The Royal Bank of Canada was a Canadian company with its headquarters at Royal Bank Plaza, 200 Bay Street, Toronto, Ontario, M5J 2W7, Canada.

148.   On September 5, 2020, at approximately 11:12 a.m., on Interstate 39/90 near mile marker 143 in Madison, Wisconsin, the 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882 being driven by Defendant Ralf Sawitzky was owned by Defendant The Royal Bank of Canada.

149.   On the above time and date, Ralf Sawitzky was acting as an agent of The Royal Bank of Canada, and in furtherance of The Royal Bank of Canada's interests.

WHEREFORE, Plaintiff JORDAN SPRING demands judgment against Defendant THE ROYAL BANK OF CANADA in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT FIVE**
**STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF**
**CARTER BOMKAMP,  A MINOR, V. PARACLETE TRANSPORT, LTD.**
**DIRECT NEGLIGENCE**

NOW COMES Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, by and through its attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant PARACLETE TRANSPORT, LTD., pleading hypothetically and in the alternative, states:

150.   On September 5, 2020, and at all times relevant to this claim, Carter Bomkamp [hereinafter "Carter"], resided at 3333 Fawn Ridge Drive, Rockford, IL 61114.

151.   On April 4, 2022, State Bank of Freeport was appointed as the guardian of the Estate of Carter Bomkamp, a minor. *17th Judicial Circuit Court, Winnebago County Circuit Court of Illinois, 2022 GR 36.*

152.   At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

153.   At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business, doing business, and transporting freight through the United States of America and through Illinois.

154.   At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

155.   At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

156.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

157.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, US DOT No. 684905, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

158.   At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

159.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

160.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

161.   At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

162.   At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

163.   On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

164.   On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

165.   At the above time and place, Plaintiff Carter Bomkamp was a passenger in Bomkamp's vehicle.

166.    At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

167.    At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

168.    At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

169.    After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

170.    On September 5, 2020, Carter was injured.

171.    In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

172.    In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

173. In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it. 49 C.F.R. §390.5.

174. In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety. "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle. 49 C.F.R. §390.5.

175. At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

176. At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

177. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, and through its employees, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

178. At all times relevant to this case, defendant PARACLETE TRANSPORT operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

179.    As a motor carrier, defendant PARACLETE TRANSPORT had a duty to require its drivers, including RALF SAWITZKY, to observe all duties or prohibitions set forth in the Motor Carrier Safety Regulations.  49 C.F.R. §390.11.

180.    On and before September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agents and/or employees, had a duty as a motor carrier to exercise ordinary care in training and supervising its drivers.

181.    On and before September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agents and/or employees, had a duty as a motor carrier to exercise ordinary care in training and supervising its drivers on how to drive in accordance with the FMCSR and the standards of care in the trucking industry.

182.    At all times relevant to this case, it was the duty of defendant PARACLETE TRANSPORT and its agent and/or employee, RALF SAWITZKY, to exercise reasonable care and caution in the operating, inspection, and maintenance of its tractor and trailer for the safety of others, including Carter.

183.    Notwithstanding its duties, defendant PARACLETE TRANSPORT and its agents and/or employees, were guilty of one or more of the following acts and/or omissions:

> (a)  Inadequately trained its drivers; or
>
> (b)  Inadequately supervised its drivers; or
>
> (c)  Assigned unqualified people to train and supervise its drivers; or
>
> (d)  Taught its drivers improper ways to use cruise control; or
>
> (e)  Inadequately trained its drivers on the dangers of driving in a construction zone; or

24

(f) Did not provide ongoing training to Ralf Sawitzky on the proper use of cruise control; or

(g) Did not evaluate Ralf Sawitzky's on-the-job performance as a CDL driver.

184.   One or more of these acts and/or omissions of defendant PARACLETE TRANSPORT was a proximate cause of the collision between the Truck being driven by Sawitzky and the Honda being driven by BOMKAMP.

185.   As a direct and proximate result of one or more of these acts and/or omissions by Defendant PARACLETE TRANSPORT, Carter has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, demands judgment against Defendant PARACLETE TRANSPORT, LTD. in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT SIX**
**STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF**
**CARTER BOMKAMP,  A MINOR, V. PARACLETE TRANSPORT, LTD.**
**VICARIOUS LIABILITY**

NOW COMES Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, by and through its attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant PARACLETE TRANSPORT, LTD., directly and through the acts or omissions of RALF SAWITZKY, as the agent

and/or employee of PARACLETE TRANSPORT, LTD., pleading hypothetically and in the alternative, states:

186.   On September 5, 2020, and at all times relevant to this claim, Carter Bomkamp, a minor, ["Carter"] resided at 3333 Fawn Ridge Drive, Rockford, IL 61114.

187.   On April 4, 2022, State Bank of Freeport was appointed as the guardian of the Estate of Carter Bomkamp, a minor. *17th Judicial Circuit Court, Winnebago County Circuit Court of Illinois, 2022 GR 36.*

188.   At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

189.   At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business, doing business, and transporting freight through the United States of America and through Illinois.

190.   At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

191.   At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

192.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

193. At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

194. At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

195. At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

196. At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

197. At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

198. At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

199. On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

200.     On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

201.     At the above time and place, Plaintiff Carter Bomkamp was a passenger in Bomkamp's vehicle.

202.     At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

203.     At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

204.     At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

205.     After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

206.     On September 5, 2020, Carter was injured.

207.     In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

208.   In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

209.   In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.  49 C.F.R. §390.5.

210.   In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety.   "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle.  49 C.F.R. §390.5.

211.   At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

212.   At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

213.    At all times relevant to this case, defendant RALF SAWITSKY operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

214.    Defendant PARACLETE TRANSPORT is vicariously liable for the negligent acts and omissions of its agent, RALF SAWITZKY, for the conduct alleged above and the conduct on September 5, 2020, contrary to and in violation of 49 C.F.R. §390.11, adopted by reference in 625 ILCS 5/18b-105.

215.    On September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agent and/or employee, RALF SAWITZKY, had a duty to exercise ordinary care to avoid colliding with the car in which Carter was a passenger.

216.    At all times relevant to this case, it was the duty of defendant PARACLETE TRANSPORT by and through the acts of its agent and/or employee, RALF SAWITZKY, to exercise reasonable care and caution in the operation, inspection and maintenance of its tractor and trailer for the safety of others, including Carter.

217.    Notwithstanding its duty, defendant PARACLETE TRANSPORT by and through its agent and/or employee, RALF SAWITZKY, was guilty of one or more of the following acts and/or omissions:

       (a) Did not keep a safe and proper lookout; or

       (b) Drove too fast for traffic conditions; or

       (c) Used cruise control in a construction zone; or

       (d) Did not apply brakes in a timely manner; or

       (e) Did not pay attention to developing traffic patterns.

218.    One or more of these acts and/or omissions of defendant PARACLETE TRANSPORT was a proximate cause of the collision between the Truck being driven by RALF SAWITZKY and the Honda being driven by BOMKAMP.

219.    As a direct and proximate result of one or more of these acts and/or omissions by Defendant PARACLETE TRANSPORT, Carter has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, demands judgment against Defendant PARACLETE TRANSPORT, LTD. in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT SEVEN**
**STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF**
**CARTER BOMKAMP,  A MINOR, V. RALF SAWITZKY**
**DIRECT NEGLIGENCE**

NOW COMES Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, by and through its attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant RALF SAWITZKY, pleading hypothetically and in the alternative, states:

220.    On September 5, 2020, and at all times relevant to this claim, Carter Bomkamp, a minor, ["Carter"] resided at 3333 Fawn Ridge Drive, Rockford, IL 61114.

221.   On April 4, 2022, State Bank of Freeport was appointed as the guardian of the Estate of Carter Bomkamp, a minor. *Winnebago County, 2022 GR 36.*

222.   At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

223.   At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business, doing business, and transporting freight through the United States of America and through Illinois.

224.   At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

225.   At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

226.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

227.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

228.   At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

229.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

230.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

231.   At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

232.   At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

233.   On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

234.   On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

235.   At the above time and place, Plaintiff Carter Bomkamp was a passenger in Bomkamp's vehicle.

236.   At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

237.    At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

238.    At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

239.    After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

240.    On September 5, 2020, Carter was injured.

241.    In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

242.    In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

243.    In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.  49 C.F.R. §390.5.

244. In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety. "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle. 49 C.F.R. §390.5.

245. At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

246. At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

247. At all times relevant to this case, defendant RALF SAWITZKY operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

248. At all times relevant to this case, it was the duty of defendant RALF SAWITZKY to exercise reasonable care and caution in the operation, inspection, and maintenance of its tractor and trailer for the safety of others, including Carter Bomkamp.

249. On September 5, 2020, defendant RALF SAWITZKY had a duty to exercise ordinary care to avoid colliding with the car in which Carter Bomkamp was a passenger.

250. Notwithstanding his duty, defendant RALF SAWITZKY was guilty of one or more of the following acts and/or omissions:

(a) Did not keep a safe and proper lookout; or

(b) Drove too fast for traffic conditions; or

(c) Used cruise control in a construction zone; or

(d) Did not apply brakes in a timely manner; or

(e) Did not pay attention to developing traffic patterns.

251.    One or more of these acts and/or omissions of defendant RALF SAWITZKY was a proximate cause of the collision between the Truck being driven by RALF SAWITZKY and the Honda being driven by BOMKAMP.

252.    As a direct and proximate result of one or more of these acts and/or omissions by Defendant RALF SAWITZKY, Carter Bomkamp has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, demands judgment against Defendant RALF SAWITZKY in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

## COUNT EIGHT
### STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF CARTER BOMKAMP,  A MINOR, V. THE ROYAL BANK OF CANADA DIRECT NEGLIGENCE

NOW COMES Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, by and through its attorneys, COPLAN & CRANE,

LTD., and for this Complaint at Law against defendant THE ROYAL BANK OF CANADA, pleading hypothetically and in the alternative, states:

253-285.    Plaintiff adopts and re-alleges Paragraphs Two Hundred Twenty-Two (220) through Two Hundred Fifty-Two (252) of Count Seven v. Ralf Sawitzky, from this Complaint at Law as Paragraphs Two Hundred Fifty-Three (253) through Two Hundred Eighty-Five (285) inclusive of this Count, as though fully set forth herein.

286.    At all times relevant to this case, defendant The Royal Bank of Canada was a Canadian company with its headquarters at Royal Bank Plaza, 200 Bay Street, Toronto, Ontario, M5J 2W7, Canada.

287.    On September 5, 2020, at approximately 11:12 a.m., on Interstate 39/90 near mile marker 143 in Madison, Wisconsin, the 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882 being driven by Defendant Ralf Sawitzky was owned by Defendant The Royal Bank of Canada.

288.    On the above time and date, Ralf Sawitzky was acting as an agent of The Royal Bank of Canada, and in furtherance of The Royal Bank of Canada's interests.

WHEREFORE, Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, a minor, demands judgment against Defendant THE ROYAL BANK OF CANADA in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT NINE**
**STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF**
**ETHAN BOMKAMP,  A MINOR, V. PARACLETE TRANSPORT, LTD.**
**DIRECT NEGLIGENCE**

NOW COMES Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, by and through its attorneys, COPLAN & CRANE, LTD.,

and for this Complaint at Law against defendant PARACLETE TRANSPORT, LTD., pleading hypothetically and in the alternative, states:

289.    On September 5, 2020, and at all times relevant to this claim, Ethan Bomkamp [hereinafter "Ethan"], resided at 3333 Fawn Ridge Drive, Rockford, IL 61114.

290.    On April 4, 2022, State Bank of Freeport was appointed as the guardian of the Estate of Ethan Bomkamp, a minor. *17th Judicial Circuit Court, Winnebago County Circuit Court of Illinois, 2022 GR 37.*

291.    At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

292.    At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business, doing business, and transporting freight through the United States of America and through Illinois.

293.    At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

294.    At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

295.    At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

296.  At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, US DOT No. 684905, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

297.  At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

298.  At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

299.  At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

300.  At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

301.  At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

302.  On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

303.    On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

304.    At the above time and place, Plaintiff Ethan Bomkamp was a passenger in Bomkamp's vehicle.

305.    At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

306.    At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

307.    At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

308.    After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

309.    On September 5, 2020, Ethan was injured.

310.    In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

311.   In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

312.   In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.  49 C.F.R. §390.5.

313.   In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety.   "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle.  49 C.F.R. §390.5.

314.   At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

315.   At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

316.   At all times relevant to this case, defendant PARACLETE TRANSPORT owned, and through its employees, inspected, and maintained a commercial motor vehicle

involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

317. At all times relevant to this case, defendant PARACLETE TRANSPORT operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

318. As a motor carrier, defendant PARACLETE TRANSPORT had a duty to require its drivers, including RALF SAWITZKY, to observe all duties or prohibitions set forth in the Motor Carrier Safety Regulations. 49 C.F.R. §390.11.

319. On and before September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agents and/or employees, had a duty as a motor carrier to exercise ordinary care in training and supervising its drivers.

320. On and before September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agents and/or employees, had a duty as a motor carrier to exercise ordinary care in training and supervising its drivers on how to drive in accordance with the FMCSR and the standards of care in the trucking industry.

321. At all times relevant to this case, it was the duty of defendant PARACLETE TRANSPORT and its agent and/or employee, RALF SAWITZKY, to exercise reasonable care and caution in the operating, inspection, and maintenance of its tractor and trailer for the safety of others, including Ethan.

322. Notwithstanding its duties, defendant PARACLETE TRANSPORT and its agents and/or employees, were guilty of one or more of the following acts and/or omissions:

      (a) Inadequately trained its drivers; or

(b) Inadequately supervised its drivers; or

(c) Assigned unqualified people to train and supervise its drivers; or

(d) Taught its drivers improper ways to use cruise control; or

(e) Inadequately trained its drivers on the dangers of driving in a construction zone; or

(f) Did not provide ongoing training to Ralf Sawitzky on the proper use of cruise control; or

(g) Did not evaluate Ralf Sawitzky's on-the-job performance as a CDL driver.

323. One or more of these acts and/or omissions of defendant PARACLETE TRANSPORT was a proximate cause of the collision between the Truck being driven by Sawitzky and the Honda being driven by BOMKAMP.

324. As a direct and proximate result of one or more of these acts and/or omissions by Defendant PARACLETE TRANSPORT, Ethan has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, demands judgment against Defendant PARACLETE TRANSPORT, LTD. in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT TEN**
**STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF**
**ETHAN BOMKAMP, A MINOR, V. PARACLETE TRANSPORT, LTD.**
**VICARIOUS LIABILITY**

NOW COMES Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, by and through its attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant PARACLETE TRANSPORT, LTD., directly and through the acts or omissions of RALF SAWITZKY, as the agent and/or employee of PARACLETE TRANSPORT, LTD., pleading hypothetically and in the alternative, states:

325.    On September 5, 2020, and at all times relevant to this claim, Ethan Bomkamp, a minor, ["Ethan"] resided at 3333 Fawn Ridge Drive, Rockford, IL 61114.

326.    On April 4, 2022, State Bank of Freeport was appointed as the guardian of the Estate of Ethan Bomkamp, a minor. *17th Judicial Circuit Court, Winnebago County Circuit Court of Illinois, 2022 GR 37.*

327.    At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

328.    At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business, doing business, and transporting freight through the United States of America and through Illinois.

329.    At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

330.    At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

331.    At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

332.    At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

333.    At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

334.    At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

335.    At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

336.    At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

337.    At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

338.    On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

339.    On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

340.    At the above time and place, Plaintiff Ethan Bomkamp was a passenger in Bomkamp's vehicle.

341.    At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

342.    At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

343.    At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

344.    After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

345.    On September 5, 2020, Ethan was injured.

346.    In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's

agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer." 49 C.F.R. §390.5.

347.    In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration. 49 C.F.R. §390.5.

348.    In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it. 49 C.F.R. §390.5.

349.    In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety. "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle. 49 C.F.R. §390.5.

350.    At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

351.    At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

352.    At all times relevant to this case, defendant RALF SAWITSKY operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

353.    Defendant PARACLETE TRANSPORT is vicariously liable for the negligent acts and omissions of its agent, RALF SAWITZKY, for the conduct alleged above and the conduct on September 5, 2020, contrary to and in violation of 49 C.F.R. §390.11, adopted by reference in 625 ILCS 5/18b-105.

354.    On September 5, 2020, defendant PARACLETE TRANSPORT, by and through its agent and/or employee, RALF SAWITZKY, had a duty to exercise ordinary care to avoid colliding with the car in which Ethan was a passenger.

355.    At all times relevant to this case, it was the duty of defendant PARACLETE TRANSPORT by and through the acts of its agent and/or employee, RALF SAWITZKY, to exercise reasonable care and caution in the operation, inspection and maintenance of its tractor and trailer for the safety of others, including Ethan.

356.    Notwithstanding its duty, defendant PARACLETE TRANSPORT by and through its agent and/or employee, RALF SAWITZKY, was guilty of one or more of the following acts and/or omissions:

     (a)  Did not keep a safe and proper lookout; or

     (b)  Drove too fast for traffic conditions; or

     (c)  Used cruise control in a construction zone; or

(d) Did not apply brakes in a timely manner; or

(e) Did not pay attention to developing traffic patterns.

357.   One or more of these acts and/or omissions of defendant PARACLETE TRANSPORT was a proximate cause of the collision between the Truck being driven by RALF SAWITZKY and the Honda being driven by BOMKAMP.

358.   As a direct and proximate result of one or more of these acts and/or omissions by Defendant PARACLETE TRANSPORT, Ethan has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, demands judgment against Defendant PARACLETE TRANSPORT, LTD. in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT FOURTEEN**
**STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF**
**ETHAN BOMKAMP,  A MINOR, V. RALF SAWITZKY**
**DIRECT NEGLIGENCE**

NOW COMES Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, by and through its attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant RALF SAWITZKY, pleading hypothetically and in the alternative, states:

359.    On September 5, 2020, and at all times relevant to this claim, Ethan Bomkamp, a minor, ["Ethan"] resided at 3333 Fawn Ridge Drive, Rockford, IL 61114.

360.    On April 4, 2022, State Bank of Freeport was appointed as the guardian of the Estate of Ethan Bomkamp, a minor. *17th Judicial Circuit Court, Winnebago County Circuit Court of Illinois, 2022 GR 37.*

361.    At all times relevant to this case, defendant RALF SAWITZKY resided in Portage La Prair, Manitoba, Canada.

362.    At all times relevant to this case, defendant PARACLETE TRANSPORT, LTD., [hereinafter "Paraclete Transport"], was a Canadian corporation, transacting business, doing business, and transporting freight through the United States of America and through Illinois.

363.    At all times relevant to this case, defendant PARACLETE TRANSPORT was subject to the United States Federal Motor Carrier Safety Regulations by way of its travel on highways and interstates in Illinois and Wisconsin.

364.    At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

365.    At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882.

366.    At all times relevant to this case, defendant PARACLETE TRANSPORT leased a 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882, from defendant ROYAL BANK OF CANADA.

367.   At all times relevant to this case, defendant PARACLETE TRANSPORT owned, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

368.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased, maintained, and serviced a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275.

369.   At all times relevant to this case, defendant PARACLETE TRANSPORT leased a Wabash National white box trailer, VIN #1JJV532D0ML256465, bearing temporary registration Indiana license plate L445275, from defendant ROYAL BANK OF CANADA.

370.   At all times relevant to this case, RALF SAWITZKY operated, drove, and controlled a tractor-trailer that was owned or leased to and maintained by defendant PARACLETE TRANSPORT.

371.   At all times relevant to this case, RALF SAWITZKY was an agent and/or employee of defendant PARACLETE TRANSPORT, and was at all times acting within the course and scope of his agency and/or employment.

372.   On September 5, 2020, Anna M. Bomkamp ["Bomkamp"] resided at 337 Sheridan Drive, Loves Park, Winnebago County, Illinois.

373.   On September 5, 2020, at approximately 11:12 a.m., Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

374.   At the above time and place, Plaintiff Ethan Bomkamp was a passenger in Bomkamp's vehicle.

375.     At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

376.     At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

377.     At the above time and place, the Honda being driven by Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

378.     After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Bomkamp.

379.     On September 5, 2020, Ethan was injured.

380.     In its relevant parts, the Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer."  49 C.F.R. §390.5.

381.     In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration.  49 C.F.R. §390.5.

382.   In its relevant parts, the Motor Carrier Safety Regulations define an "Employer" as any person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it.  49 C.F.R. §390.5.

383.   In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety.   "Employee" includes a driver of a commercial motor vehicle, including an independent contractor while in the course of operating a commercial motor vehicle.   49 C.F.R. §390.5.

384.   At all times relevant to this case, the tractor and trailer driven by RALF SAWITZKY were connected as a semi-trailer and therefore, a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

385.   At all times relevant to this case, RALF SAWITZKY was a driver of that semi-trailer, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

386.   At all times relevant to this case, defendant RALF SAWITZKY operated, inspected, and maintained a commercial motor vehicle involved in this crash, namely the tractor-trailer or semi-trailer as defined by the Motor Carrier Safety Regulations.

387.   At all times relevant to this case, it was the duty of defendant RALF SAWITZKY to exercise reasonable care and caution in the operation, inspection, and maintenance of its tractor and trailer for the safety of others, including Ethan.

388.    On September 5, 2020, defendant RALF SAWITZKY had a duty to exercise ordinary care to avoid colliding with the car in which Ethan was a passenger.

389.    Notwithstanding his duty, defendant RALF SAWITZKY was guilty of one or more of the following acts and/or omissions:

(a)  Did not keep a safe and proper lookout; or

(b)  Drove too fast for traffic conditions; or

(c)  Used cruise control in a construction zone; or

(d)  Did not apply brakes in a timely manner; or

(e)  Did not pay attention to developing traffic patterns.

390.    One or more of these acts and/or omissions of defendant RALF SAWITZKY was a proximate cause of the collision between the Truck being driven by RALF SAWITZKY and the Honda being driven by BOMKAMP.

391.    As a direct and proximate result of one or more of these acts and/or omissions by Defendant RALF SAWITZKY, Ethan has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, demands judgment against Defendant RALF SAWITZKY in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

## COUNT FIFTEEN
### STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF ETHAN BOMKAMP,  A MINOR, V. THE ROYAL BANK OF CANADA DIRECT NEGLIGENCE

NOW COMES Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, by and through its attorneys, COPLAN & CRANE, LTD., and for this Complaint at Law against defendant THE ROYAL BANK OF CANADA, pleading hypothetically and in the alternative, states:

392-424.     Plaintiff adopts and re-alleges Paragraphs Three Hundred Fifty-Nine (359) through Three Hundred Ninety-One Three (391) of Count Fourteen v. Ralf Sawitzky, to this Complaint at Law as Paragraphs Three Hundred Ninety-Two (392) through Four Hundred Twenty-Four (424) inclusive of this Count, as though fully set forth herein.

425.     At all times relevant to this case, defendant The Royal Bank of Canada was a Canadian company with its headquarters at Royal Bank Plaza, 200 Bay Street, Toronto, Ontario, M5J 2W7, Canada.

426.     On September 5, 2020, at approximately 11:12 a.m., on Interstate 39/90 near mile marker 143 in Madison, Wisconsin, the 2017 Volvo tractor, VIN #4V4NV9EH2HN986988, Manitoba Canada license plate PDK 882 being driven by Defendant Ralf Sawitzky was owned by Defendant The Royal Bank of Canada.

427.     On the above time and date, Ralf Sawitzky was acting as an agent of The Royal Bank of Canada, and in furtherance of The Royal Bank of Canada's interests.

WHEREFORE, Plaintiff STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, demands judgment against Defendant THE ROYAL BANK OF CANADA in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

**COUNT SIXTEEN**
**JORDAN SPRING V. HOFFMAN CONSTRUCTION COMPANY**

NOW COMES the Plaintiff, JORDAN SPRING, by his attorneys, COPLAN & CRANE, LTD., and complaining of the Defendant, HOFFMAN CONSTRUCTION COMPANY, for Count Sixteen of this Complaint at Law, pleading hypothetically and in the alternative, states:

428.    On September 5, 2020, Plaintiff Jordan Spring ["Spring"] resided at 1528 Grant Avenue, Rockford, Illinois, Winnebago County, Illinois.

429.    On and before September 5, 2020, the Defendant, HOFFMAN CONSTRUCTION COMPANY ["HOFFMAN"], was a construction company with its principal place of business at 123 County Road A, Black River Falls, Jackson County, Wisconsin.

430.    On and before September 5, 2020, HOFFMAN, owned and/or was in charge of the erection, construction, repairs, safety, and/or alteration and possessed, operated, managed, maintained and controlled, both directly and indirectly, individually and through its agents, servants and employees, a construction project on Interstate 39/90 near mile marker 143 in Madison, Dane County, Wisconsin. ["Construction Project.]

431.    On and before September 5, 2020, HOFFMAN, individually and through its agents, servants and employees, was present during the course of such erection, construction, repairs, and alterations at the Construction Project.

432.    On and before September 5, 2020, HOFFMAN, individually and through its agents, servants and employees, participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated

in the scheduling of the work and the inspection of the work, including traffic management and lane reduction at the Construction Project.

433.  On and before September 5, 2020, HOFFMAN, had the authority to stop the work, refuse the work and materials, and order changes in the work in the event the work was being performed in a dangerous manner or for any other reason on the Construction Project, including traffic management and lane reduction.

434.  On and before September 5, 2020, HOFFMAN erected, constructed, placed or operated or caused to be erected, constructed, placed or operated the Construction Project.

435.  On and before September 5, 2020, HOFFMAN had a duty to exercise reasonable care in the erection, construction, placement, or operation of the Construction Project.

436.  On and before September 5, 2020, HOFFMAN allowed, permitted, and directed traffic to continue to travel through the Construction Project.

437.  On and before September 5, 2020, HOFFMAN was had a duty to exercise reasonable care while altering the traffic lanes near the Construction Project, which includes reducing the number of lanes or changing the direction of the traffic lanes.

438.  On and before September 5, 2020, HOFFMAN was had a duty to exercise reasonable care by warning motorists, including Anna Bomkamp, of all changes to the traffic patterns near the Construction Project, including changes to the number of lanes, when the lanes are eliminated, and when changes to traffic lane direction.

439.  On and before September 5, 2020, the traffic patterns in the Construction Project were improper, lacked sufficient warning, reduced too quickly and therefore created a dangerous condition for motorists traveling through the Construction Project.

440.    On and before September 5, 2020, HOFFMAN, individually and through its agents, carelessly and negligently caused and permitted the traffic pattern portion of the Construction Project to become and remain in a dangerous condition for motorists traveling through the Construction Project, although the Defendant knew, or in the exercise of ordinary and reasonable care should have known, of the dangerous condition.

441.    On September 5, 2020, at approximately 11:12 a.m., Anna Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

442.    At the above time and place, Plaintiff Spring was a passenger in Bomkamp's vehicle.

443.    At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

444.    At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

445.    At the above time and place, Ascheman began to rapidly decrease speed due to the reduction in lanes near the Construction Project.

446.    At the above time and place, the Honda being driven by Anna Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

447.    After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Anna Bomkamp.

448.    On September 5, 2020, Spring was injured.

449.   On and before September 5, 2020, HOFFMAN, by and through its agents, servants and employees, was then and there guilty of one or more of the following negligent acts and/or omissions:

   (a) Did not properly change the traffic patterns near the Construction Project; or

   (b) Did not inspect the changes to the traffic patterns near the Construction Project; or

   (c) Did not properly inspect the changes to the traffic patterns near the Construction Project; or

   (d) Chose not to properly operate, manage, maintain and control the Construction Project; or

   (e) Chose not to provide motorists, like the Plaintiff, with a safe road to travel; or

   (f) Did not properly warn motorists, like the Plaintiff, of the change in the traffic pattern; or

   (g) Did not properly warn motorists, like the Plaintiff, of the reduction in the traffic lanes; or

   (h) Did not supervise the changes to the traffic patterns near the Construction Project; or

   (i) Did not properly supervise the changes to the traffic patterns near the Construction Project.

450.   One or more of these acts and/or omissions of defendant HOFFMAN CONSTRUCTION was a proximate cause of the collision between the Truck being driven by Sawitzky and the Honda being driven by Anna Bomkamp.

451.   As a direct and proximate result of one or more of these acts and/or omissions by Defendant HOFFMAN CONSTRUCTION, Jordan Spring has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past

and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, the Plaintiff, JORDAN SPRING, demands judgment against the Defendant, HOFFMAN CONSTRUCTION COMPANY in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

### COUNT SEVENTEEN
### STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF CARTER BOMKAMP, A MINOR, V. HOFFMAN CONSTRUCTION COMPANY

NOW COMES the Plaintiff, STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, by his attorneys, COPLAN & CRANE, LTD., and complaining of the Defendant, HOFFMAN CONSTRUCTION COMPANY, for this Count of this Complaint at Law, pleading hypothetically and in the alternative, states:

452.    On September 5, 2020, and at all times relevant to this claim, Carter Bomkamp, a minor, resided at 3333 Fawn Ridge Drive, Rockford, IL 61114.

453.    On April 4, 2022, the State Bank of Freeport was appointed as the guardian of the Estate of Carter Bomkamp, a minor. *17th Judicial Circuit Court, Winnebago County Circuit Court of Illinois, 2022 GR 36.*

454. On and before September 5, 2020, the Defendant, HOFFMAN CONSTRUCTION COMPANY ["HOFFMAN"], was a construction company with its principal place of business at 123 County Road A, Black River Falls, Jackson County, Wisconsin 54615-9209.

455.    On and before September 5, 2020, HOFFMAN, owned and/or was in charge of the erection, construction, repairs, safety, and/or alteration and possessed, operated,

managed, maintained and controlled, both directly and indirectly, individually and through its agents, servants and employees, a construction project on Interstate 39/90 near mile marker 143 in Madison, Dane County, Wisconsin. ["Construction Project.]

456.  On and before September 5, 2020, HOFFMAN, individually and through its agents, servants and employees, was present during the course of such erection, construction, repairs, and alterations at the Construction Project.

457.  On and before September 5, 2020, HOFFMAN, individually and through its agents, servants and employees, participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work, including traffic management and lane reduction at the Construction Project.

458.  On and before September 5, 2020, HOFFMAN, had the authority to stop the work, refuse the work and materials, and order changes in the work in the event the work was being performed in a dangerous manner or for any other reason on the Construction Project, including traffic management and lane reduction.

459.  On and before September 5, 2020, HOFFMAN erected, constructed, placed or operated or caused to be erected, constructed, placed or operated the Construction Project.

460.  On and before September 5, 2020, HOFFMAN had a duty to exercise reasonable care in the erection, construction, placement, or operation of the Construction Project.

461.  On and before September 5, 2020, HOFFMAN allowed, permitted, and directed traffic to continue to travel through the Construction Project.

462.  On and before September 5, 2020, HOFFMAN was had a duty to exercise reasonable care while altering the traffic lanes near the Construction Project, which includes reducing the number of lanes or changing the direction of the traffic lanes.

463.  On and before September 5, 2020, HOFFMAN was had a duty to exercise reasonable care by warning motorists, including Anna Bomkamp, of all changes to the traffic patterns near the Construction Project, including changes to the number of lanes, when the lanes are eliminated, and when changes to traffic lane direction.

464.  On and before September 5, 2020, the traffic patterns in the Construction Project were improper, lacked sufficient warning, reduced too quickly and therefore created a dangerous condition for motorists traveling through the Construction Project.

465.  On and before September 5, 2020, HOFFMAN, individually and through its agents, carelessly and negligently caused and permitted the traffic pattern portion of the Construction Project to become and remain in a dangerous condition for motorists traveling through the Construction Project, although the Defendant knew, or in the exercise of ordinary and reasonable care should have known, of the dangerous condition.

466.  On September 5, 2020, at approximately 11:12 a.m., Anna Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

467.  At the above time and place, Plaintiff CARTER BOMKAMP was a passenger in Bomkamp's vehicle.

468.  At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Anna Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

469.    At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Anna Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

470.    At the above time and place, Ascheman began to rapidly decrease speed due to the reduction in lanes near the Construction Project.

471.    At the above time and place, the Honda being driven by Anna Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

472.    After the Anna Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Anna Bomkamp.

473.    On September 5, 2020, CARTER BOMKAMP was injured.

474.    On and before September 5, 2020, HOFFMAN, by and through its agents, servants and employees, was then and there guilty of one or more of the following negligent acts and/or omissions:

> (a) Did not properly change the traffic patterns near the Construction Project; or
>
> (b) Did not inspect the changes to the traffic patterns near the Construction Project; or
>
> (c) Did not properly inspect the changes to the traffic patterns near the Construction Project; or
>
> (d) Chose not to properly operate, manage, maintain and control the Construction Project; or
>
> (e) Chose not to provide motorists, like the Plaintiff, with a safe road to travel; or
>
> (f) Did not properly warn motorists, like the Plaintiff, of the change in the traffic pattern; or
>
> (g) Did not properly warn motorists, like the Plaintiff, of the reduction in the traffic lanes; or

(h) Did not supervise the changes to the traffic patterns near the Construction Project; or

(i) Did not properly supervise the changes to the traffic patterns near the Construction Project.

475.    One or more of these acts and/or omissions of defendant HOFFMAN CONSTRUCTION was a proximate cause of the collision between the Truck being driven by Sawitzky and the Honda being driven by Anna Bomkamp.

476.    As a direct and proximate result of one or more of these acts and/or omissions by Defendant HOFFMAN CONSTRUCTION, CARTER BOMKAMP has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment; has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, the Plaintiff, STATE BANK OF FREEPORT, Guardian of the Estate of CARTER BOMKAMP, demands judgment against the Defendant, HOFFMAN CONSTRUCTION COMPANY in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

## COUNT EIGHTEEN
### STATE BANK OF FREEPORT, GUARDIAN OF THE ESTATE OF ETHAN BOMKAMP,  A MINOR, V.  HOFFMAN CONSTRUCTION COMPANY

NOW COMES the Plaintiff, STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, by his attorneys, COPLAN & CRANE, LTD., and complaining of the Defendant, HOFFMAN CONSTRUCTION COMPANY, for this Count of this Complaint at Law, pleading hypothetically and in the alternative, states:

477.    On September 5, 2020, and at all times relevant to this claim, Ethan Bomkamp, a minor, resided at 3333 Fawn Ridge Drive, Rockford, IL 61114.

478.    On April 4, 2022, the State Bank of Freeport was appointed as the guardian of the Estate of Ethan Bomkamp, a minor. *17ᵗʰ Judicial Circuit Court, Winnebago County Circuit Court of Illinois, 2022 GR 37.*

479. On and before September 5, 2020, the Defendant, HOFFMAN CONSTRUCTION COMPANY ["HOFFMAN"], was a construction company with its principal place of business at 123 County Road A, Black River Falls, Jackson County, Wisconsin 54615-9209.

480.    On and before September 5, 2020, HOFFMAN, owned and/or was in charge of the erection, construction, repairs, safety, and/or alteration and possessed, operated, managed, maintained and controlled, both directly and indirectly, individually and through its agents, servants and employees, a construction project on Interstate 39/90 near mile marker 143 in Madison, Dane County, Wisconsin. ["Construction Project.]

481. On and before September 5, 2020, HOFFMAN, individually and through its agents, servants and employees, was present during the course of such erection, construction, repairs, and alterations at the Construction Project.

482. On and before September 5, 2020, HOFFMAN, individually and through its agents, servants and employees, participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work, including traffic management and lane reduction at the Construction Project.

483.  On and before September 5, 2020, HOFFMAN, had the authority to stop the work, refuse the work and materials, and order changes in the work in the event the work was being performed in a dangerous manner or for any other reason on the Construction Project, including traffic management and lane reduction.

484.  On and before September 5, 2020, HOFFMAN erected, constructed, placed or operated or caused to be erected, constructed, placed or operated the Construction Project.

485.  On and before September 5, 2020, HOFFMAN had a duty to exercise reasonable care in the erection, construction, placement, or operation of the Construction Project.

486.  On and before September 5, 2020, HOFFMAN allowed, permitted, and directed traffic to continue to travel through the Construction Project.

487.  On and before September 5, 2020, HOFFMAN was had a duty to exercise reasonable care while altering the traffic lanes near the Construction Project, which includes reducing the number of lanes or changing the direction of the traffic lanes.

488.  On and before September 5, 2020, HOFFMAN was had a duty to exercise reasonable care by warning motorists, including Anna Bomkamp, of all changes to the traffic patterns near the Construction Project, including changes to the number of lanes, when the lanes are eliminated, and when changes to traffic lane direction.

489.  On and before September 5, 2020, the traffic patterns in the Construction Project were improper, lacked sufficient warning, reduced too quickly and therefore created a dangerous condition for motorists traveling through the Construction Project.

490.  On and before September 5, 2020, HOFFMAN, individually and through its agents, carelessly and negligently caused and permitted the traffic pattern portion of the

Construction Project to become and remain in a dangerous condition for motorists traveling through the Construction Project, although the Defendant knew, or in the exercise of ordinary and reasonable care should have known, of the dangerous condition.

491.    On September 5, 2020, at approximately 11:12 a.m., Anna Bomkamp was traveling northbound, in her 2007 Honda Odyssey ["Honda"], on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

492.    At the above time and place, Plaintiff Ethan Bomkamp was a passenger in Anna Bomkamp's vehicle.

493.    At the above place and time, Abigail Rose Ascheman ["Ascheman"] was also traveling northbound, in a 2018 Ford Escape ["Ford"], ahead of Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

494.    At the above place and time, Ralf Sawitzky was also traveling northbound, in a 2017 Volvo semi-tractor-trailer truck ["Truck"], behind Bomkamp on Interstate 39/90 at mile marker 143 in Madison, Wisconsin.

495.    At the above time and place, Ascheman began to rapidly decrease speed due to the reduction in lanes near the Construction Project.

496.    At the above time and place, the Honda being driven by Anna Bomkamp collided with and/or contacted the vehicle being driven by Ascheman.

497.    After the Bomkamp and Ascheman impact at the above time and place, the Truck being driven by Sawitzky crashed into the Honda being driven by Anna Bomkamp.

498.    On September 5, 2020, Ethan Bomkamp was injured.

499. On and before September 5, 2020, HOFFMAN, by and through its agents, servants and employees, was then and there guilty of one or more of the following negligent acts and/or omissions:

> (a) Did not properly change the traffic patterns near the Construction Project; or
>
> (b) Did not inspect the changes to the traffic patterns near the Construction Project; or
>
> (c) Did not properly inspect the changes to the traffic patterns near the Construction Project; or
>
> (d) Chose not to properly operate, manage, maintain and control the Construction Project; or
>
> (e) Chose not to provide motorists, like the Plaintiff, with a safe road to travel; or
>
> (f) Did not properly warn motorists, like the Plaintiff, of the change in the traffic pattern; or
>
> (g) Did not properly warn motorists, like the Plaintiff, of the reduction in the traffic lanes; or
>
> (h) Did not supervise the changes to the traffic patterns near the Construction Project; or
>
> (i) Did not properly supervise the changes to the traffic patterns near the Construction Project.

500. One or more of these acts and/or omissions of defendant HOFFMAN CONSTRUCTION was a proximate cause of the collision between the Truck being driven by Sawitzky and the Honda being driven by Anna Bomkamp.

501. As a direct and proximate result of one or more of these acts and/or omissions by Defendant HOFFMAN CONSTRUCTION, Ethan Bomkamp has been injured, damaged and incapacitated; has in the past and will in the future, incur legal obligations for hospital, medical, nursing, rehabilitative, and related services and treatment;

has in the past and will in the future lose profits, wages, and earnings, which would have been otherwise made and acquired; has been caused to suffer pain, disability, disfigurement and inconvenience; all of which injuries and conditions are permanent.

WHEREFORE, the Plaintiff, STATE BANK OF FREEPORT, Guardian of the Estate of ETHAN BOMKAMP, a minor, demands judgment against the Defendant, HOFFMAN CONSTRUCTION COMPANY in a sum in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000.00), plus costs.

Respectfully submitted,

COPLAN & CRANE, LTD.

By: /s/ Ben Crane

**COPLAN & CRANE, LTD.**
**1111 WESTGATE STREET**
**OAK PARK, ILLINOIS 60301**
**(708) 358-8080 (TELEPHONE)**
**(708) 358-8181 (FACSIMILE)**
**ARDC NO. 6273651**